IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

RON ALLEN HUNTER JR.,          )

        Plaintiff           )   1:22-CV-00068-SPB

vs.                   )   RICHARD A. LANZILLO
                      )   CHIEF UNITED STATES MAGISTRATE
CHRISTOPHER WEBER, TPR.,   )   JUDGE

        Defendant       )   REPORT AND RECOMMENDATION ON
                      )   CROSS-MOTIONS FOR SUMMARY
                      )   JUDGMENT

                      )   IN RE: ECF NOS. 88 AND 105

                      )

I.    Recommendation

In this action, Plaintiff Ron Allen Hunter, Jr. ("Hunter") asserts claims of excessive force,

false arrest, and false imprisonment pursuant to 42 U.S.C. § 1983 against Pennsylvania State

Trooper Christopher Weber ("Weber").  Pending before the Court are Weber's motion for

summary judgment (ECF No. 105) and Hunter's cross-motion for summary judgment (ECF No.

88).  Both motions are before the undersigned for Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).  For the reasons discussed herein,

it is respectfully recommended that Weber's motion be granted in part and denied in part.

Specifically, Weber's motion for summary judgment should be granted as to Hunter's false arrest

and false imprisonment claims but denied as to Hunter's excessive force claim.  It is further

respectfully recommended that Hunter's cross-motion for summary judgment be denied.

1

II.    Report

    A.  Standard of Review

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). "Summary judgment is 'essentially put up or shut up time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.'" *Dumas v. Almusawi*, 2024 WL 3414243, at *3 (W.D. Pa. July 15, 2024) (quoting *Berckeley Inv. Gro. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (cleaned up)). Put another way, to avoid summary judgment,

the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

On a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion ..." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012). "The rule is no different where there are cross-motions for summary judgment." *Waldron v. Wetzel*, 2021 WL 5770222, at *4 (W.D. Pa. Dec. 6, 2021) (quoting *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008)).

Where, as here, the record includes video recordings of the events at issue, the standard is modified. When video evidence exists, "and there is no allegation that the video misrepresents 'what actually happened,' the Court need not view the evidence in the light most favorable to the non-moving party." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). Instead, the facts should be viewed "in the light depicted by the videotape, especially when it blatantly contradicts the nonmovant." *Id.* (quoting *Bland v. City of Newark*, 900 F.3d (2018) (cleaned up)).

The "[c]oncurrent resolution of cross-motions for summary judgment can present a formidable task," because Rule 56 requires that the "court view all facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences." *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004). To that end, while "[c]ourts are permitted to resolve cross-motions for summary judgment concurrently[,] ... [w]hen doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (citations omitted); *see also Richman & Richman Real Est., LLC v. Sentinel Ins. Co., Ltd.*, 2017 WL 4475963, at *2 (E.D. Pa. June 13, 2017) (noting that "[c]ourts treat cross-motions for summary judgment as if they were distinct, independent motions, and must rule on each party's motion on an individual and separate basis").

B. Hunter's Local Rule 56 Violations

Before recounting the material facts of this case, the Court must address the consequences of Hunter's violations of Western District Local Rule 56(B) and (C). Both the concise statement of material facts Hunter filed in support of his motion for summary judgment (ECF No. 84) and the responsive concise statement of material facts he filed in opposition to Weber's motion for summary judgment (ECF No. 111) fail to comply with the basic requirements of Local Rule 56.

Local Rule 56(B) requires a party moving for summary judgment to file a "concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material, including any facts which for purposes of the summary judgment motion only are assumed to be true." LCvR 56(B)(1). The rule further directs that the moving party's concise statement set forth the facts

4

"in separately numbered paragraphs" with citation to the "particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement…" *Id.* The concise statement filed by Weber in support of his motion for summary judgment (ECF No. 107) complies with these requirements. Hunter's concise statement in support of his motion does not. *See* ECF No. 84. Hunter's concise statement includes only two factual assertions relating to the elements of his false arrest and false imprisonment claim. He states, "Trooper Weber pulled me over jumped out of his car and assaulted me. Trooper Weber broke my ribbs (sic) and chest plait (sic)." *Id.* Hunter's assertion that Weber assaulted him is a conclusion of law that Hunter fails to support with any factual details or citation to the record. Although Hunter separately filed medical records not associated with his concise statement, their content provides no support for Hunter's assertion that Weber assaulted him or that he sustained broken ribs or a broken chest plate during the encounter. *See e.g.,* ECF Nos. 61, 67-2, 81-1, 86. Despite the deficiencies of Hunter's concise statement, Weber filed a responsive concise statement in which he admitted that he pulled his state police vehicle over to talk to Hunter but denied that he assaulted Hunter and that Hunter sustained broken ribs or a broken chest plate. *See* ECF No. 93. Weber also supported his denials with appropriate citations to the record. *Id.*

Local Rule 56(C)(1) requires a party opposing a motion for summary judgment to file a responsive concise statement that (1) responds to each numbered paragraph of the movant's concise statement, admitting or denying the facts asserted in each such paragraph; (2) states the record basis for each denial of fact asserted and properly supported in the movant's concise statement; and (3) states, in separately numbered paragraphs, any additional material facts (with record support) upon which the nonmovant relies in opposing the motion. *See* LCvR 56(C)(1). Weber's responsive concise statement (ECF No. 93) complied with these requirements. Hunter's

responsive concise statement (ECF No. 111) complied with none of these requirements. Instead, it presented only a rambling narrative with no responses corresponding to Weber's statements of fact and with no record support. *See id.*

This Court requires strict compliance with the provisions of Local Rule 56. *See, e.g., Coleman v. Tice*, 2018 WL 5724125, at *2 n.3 (W.D. Pa. Oct. 10, 2018), *report and recommendation adopted* 2018 WL 5722316 (W.D. Pa. Nov. 1, 2018); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Authority*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017). This strict compliance applies equally to pro se plaintiffs and those represented by counsel. *See, e.g., Peay v. Sager*, 2022 WL 565391, at *1–2 (W.D. Pa. Feb. 1, 2022), *report and recommendation adopted*, 2022 WL 562936 (W.D. Pa. Feb. 24, 2022). A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement." *Hughes*, 2017 WL 2880875, at *1. Any material facts "set forth in the moving party's Concise Statement of Material Facts ... which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E). While courts provide some leniency to pro se litigants when applying procedural rules, the Court "is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se litigant] that counsel would normally carry out." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules

in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Accordingly, the Court should deem admitted any properly supported statement of material fact in Weber's Concise Statement to which Hunter has either failed to respond or concerning which he has made a contrary assertion without record support. *See* LCvR 56.E. However, the Court may consider any contrary facts apparent from admissible evidence in the record, such as video evidence and medical records, to the extent such evidence may support Hunter's claims or contradict Weber's assertions of fact. *See Peay*, 2022 WL 565391, at *2 (citing *Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014).

C. Material Facts

The material facts underpinning Hunter's claims are relatively straightforward. On January 11, 2022, Weber arrested Hunter and charged him with public drunkenness, disorderly conduct, and resisting arrest. ECF No. 108-1 p. 3 (police report). Weber had been dispatched to a motor vehicle crash in front of 5321 Loomis Street in Erie based on a report that "there was a male, possibly the operator of the vehicle, that was acting like he was acting out, possibly on drugs." ECF No. 108-1, p. 19 (Weber's affidavit of probable cause).[1] Dashcam video from Weber's state patrol vehicle shows that the subject address was in a mobile home park. *See* ECF No. 108-2 (dashcam video). The dashcam video also shows Weber's patrol vehicle pass a man dressed in all black walking along the side of the road as it proceeded through the park. *Id.* Weber's affidavit of probable cause states that Weber arrived in the area and spoke with the park

---

[1] Weber submitted the affidavit of probable cause under oath. Accordingly, it is treated as an affidavit for purposes of the pending cross-motions for summary judgment.

manager, who had made the initial report to the police.[2]  ECF No. 108-1, p. 19.  Consistent with

this statement, the dashcam video shows Weber's vehicle approach a white sedan whose driver

waves to Weber through an open driver's side window.  *See* ECF No. 108-2.  Weber's vehicle

then stops briefly next to the sedan, apparently to facilitate a conversation, but because Weber's

audio recording function was not engaged at this point, there is no recording of the conversation.

*Id.*  Weber's affidavit of probable cause records that the park manager related that "the unknown

male was wearing all black with a neck tattoo and was last seen walking towards the

entrance/exit of the park."  ECF No. 108-1, p.19.  Weber radioed this description to another

patrol unit that was coming to the scene; he then drove his patrol vehicle towards the

entrance/exit of the mobile home park because Weber had noticed a male matching that

description when he entered the mobile home park.  *Id.*  The dashcam video confirms this

observation.  *See* ECF No. 108-2.  Weber's affidavit goes on to state that he "made contact with

the male who matched the description given by the caller" and "exited [his] patrol vehicle and

began to talk with the unknown male about the crash up the road."  ECF No. 108-1, p.19.

Weber recorded that he observed this individual acting "jittery, anxious, and nervous" and noted

that "he appeared to be under the influence of an unknown substance."  *Id.*  Weber then reported

that the "male became agitated and began yelling so [he] placed [his] hand on his shoulder, told

him to relax and began to walk him towards the push bar on the front of [his] patrol vehicle."  *Id.*

Weber records that this prompted the male to throw "his arms up while yelling causing [Weber]

to let go of him" as "he attempted to run away."  *Id.*  Weber records that he "restrained the

unknown male and he was taken to the ground" but "[o]nce on the ground the unknown male

began pushing/shoving [Weber] and attempting to run away."  *Id.*  Weber's affidavit further

---

[2] The Pennsylvania State Police Report identifies the park manager as George William Evans.  *See* ECF No. 108-1, p. 5.

reports that he used a "knee strike" to the man's side "to turn him over onto his stomach where he refused to give [Weber] his hand that he had under his body." *Id.* "After a struggle," Weber reports, he "was able to get his hands behind his back." *Id.*

The dashcam video records some of the interaction between Weber and Hunter that Weber recounts in his affidavit of probable cause, but the physical altercation occurred to the left of Weber's patrol vehicle and outside the dashcam's visual recording range. *See* ECF No. 108-2. In addition, the audio recording function of the dashcam apparently was not engaged until after Hunter had been secured on the ground. *Id.* When the audio function was engaged, Hunter could be seen lying on the road surface yelling incoherently and acting erratically. *Id.* Weber is heard and observed encouraging Hunter to identify himself and to get up from the cold road surface, but Hunter repeatedly declined to do either. *Id.* Ultimately, Hunter was placed in the backseat of Weber's patrol vehicle where he continued to yell incoherently and act erratically. *Id.* Thereafter, emergency medical services arrived and transported Hunter to a local hospital for examination and treatment. *Id.* After hospital personnel medically cleared Hunter, he was transported to the Pennsylvania State Police station. After arraignment, he was remanded to the Erie County Prison.

D. Discussion and Analysis

1. Weber's motion for summary judgment should be granted as to Hunter's false arrest and false imprisonment claims.

Weber argues that he is entitled to summary judgment on Hunter's false arrest and imprisonment claims because the record establishes probable cause to support Hunter's arrest on at least one of the charges against him. *See* ECF No. 106, pp. 5-8. Hunter disputes that there was probable cause for his arrest. *See* ECF No. 8, pp. 4-5 (Complaint). In the false arrest and false imprisonment context, "a plaintiff must establish: (1) that there was an arrest [or

9

imprisonment]; and (2) that the [detention] was made without probable cause." *Rittacco v. Zelechowski*, 2024 WL 2319505, at *6 (W.D. Pa. May 22, 2024) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 6800 (3d Cir. 2012)); *see also Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (noting that in this context, "false arrest and false imprisonment are essentially the same claim"). Thus, to succeed on either his false arrest or false imprisonment claim against Weber, Hunter must demonstrate that Weber arrested and detained him without probable cause. *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (holding that a claim of false arrest requires a showing that the arrest was made without probable cause).

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1996)). An officer has probable cause to arrest a person "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). (citing *Wilson*, 212 F.3d at 790 (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999)). It is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983). *See also United States v. Jones*, 2024 WL 3540982, at *2 (E.D. Pa. July 24, 2024). The probable cause analysis is grounded in common sense and the collation of the entire factual background. *See Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997). "Furthermore, whether the arresting officer acts in good faith or in bad faith in effectuating the arrest is irrelevant." *Dumas*, 2024 WL 3414243, at *7 (citation omitted). The assessment is based on an objective evaluation of the totality of the

circumstances. *Harvard*, 973 F.3d at 200. Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Cayenne v. Tobyhanna Twp.*, 2024 WL 3680925, at *10 (M.D. Pa. Aug. 6., 2024) (citing *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) and *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Importantly, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994). *See also Maldonado v. Filutze*, 2023 WL 8812506, at *4 (W.D. Pa. Nov. 14, 2023) (holding that "[w]here an officer charged the plaintiff with multiple offenses, a false arrest claim against the officer fails as a matter of law if any of the charges was supported by probable cause"), *report and recommendation adopted*, 2023 WL 8809673 (W.D. Pa. Dec. 20, 2023) (*citing Graham v. Connor*, 490 U.S. 386, 393, n. 6 (1989)). Therefore, Hunter's false arrest and false imprisonment claims fail as a matter of law if Weber had probable cause to arrest him on any one or more of the three charges against him—public drunkenness, disorderly conduct[3], or resisting arrest.[4]

Here, the Court's analysis need not proceed beyond the public drunkenness charge because the record demonstrates that Weber had probable cause to believe that Hunter was guilty

---

[3] Under Pennsylvania law, "a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 18 Pa.C.S. § 5503.

[4] Under Pennsylvania law, "[a] person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.

of this offense.[5]   Under Pennsylvania law, a person is guilty of public drunkenness "if he appears in any public place manifestly under the influence of alcohol or a controlled substance … to the degree that he may endanger himself or other persons or property, or annoy persons in his vicinity." 18 Pa.C.S. § 5505.  The mobile home park manager's initial report was of a man who was "acting out, possibly on drugs."   The park manager later reported to Weber that the individual was dressed in all black and had a neck tattoo, which matched Hunter's description. Weber's reliance on information communicated by the dispatcher and the park manager was reasonable and appropriate.  *See United States v. Cutchin*, 956 F.2d 1216, 1217–18 (D.C. Cir. 1992) (holding that  dispatcher may alert other officers by radio, who may then rely on the report, even though they cannot vouch for it) (citing *United States v. Hensley*, 469 U.S. 221, 230–33 (1985); *Whiteley v. Warden*, 401 U.S. 560, 568 (1971); *see also United States v. Wright*, 74 F.4th 722, 732 (5th Cir. 2023); *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003) (holding that a police "dispatcher's knowledge is properly considered as part of our analysis of reasonable suspicion" even where the information was "distilled and paraphrased" when transferred to the arresting officer).

In addition, Weber had personally observed Hunter as he initially passed him walking down the street and immediately returned to find him after the park manager provided his description.   When Weber approached Hunter, he confirmed that he matched the description given by the park manager and immediately observed that Hunter appeared "jittery, anxious, and nervous" and noted that "he appeared to be under the influence of an unknown substance."

---

[5] Hunter was later charged with violating 75 Pa.C.S. § 6308, which provides: "The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification if a pedestrian or driver of a pedalcycle, and shall write their name in the presence of the police officer if so required for the purpose of establishing identity."  The facts upon which this charge was based did not occur, however, until Hunter was already in custody.  Therefore, this violation could not have served as a basis for his initial arrest.

Weber's dashcam video also recorded additional indicia of intoxication. It showed that Hunter was walking outside in clothing inadequate for the then-existing winter weather conditions. And it captured Hunter's incoherent yelling and erratic behavior after he was subdued. Whether Hunter was in fact under the influence of alcohol or a controlled substance is irrelevant because the facts and circumstances that were communicated to Weber and that he personally observed supported a reasonable belief that Hunter was intoxicated. These same facts and circumstance supported Weber's reasonable belief that Hunter was a potential danger to himself or a potential danger or annoyance to others. Specifically, Hunter's inadequate dress for the winter conditions and Weber's personal observations supported a reasonable belief that Hunter was a potential danger to himself, and the reports from the park manager and Weber's personal observations supported a reasonable belief that he was at least a potential annoyance to others in the area and, arguably, a danger to others. The totality of the circumstances presented to Weber objectively supported probable cause to arrest Hunter for public drunkenness. *See, e.g., McMillan v. Lycoming Cnty.*, 2024 WL 315725, at *5 (M.D. Pa. Jan. 26, 2024) (officer's personal observations and entitlement to rely on the statement of a fellow officer sufficient to establish probable cause); *Carbone v. City of New Castle*, 2017 WL 5569833, at *13 (W.D. Pa. Nov. 20, 2017), *aff'd sub nom. Carbone v. Salem*, 788 Fed. Appx. 130 (3d Cir. 2019) (officer's observation of defendant "fidgeting" and "acting nervous" sufficient to support probable cause to arrest for concealing contraband). The existence of probable cause on this charge negates any claim for false arrest or false imprisonment against Weber. *See Barna*, 42 F.3d at 819; *see also Goodwin v. Conway*, 836 F.3d 321, 327 (3d Cir. 2016) (recognizing that probable cause is a complete defense to claims under the Fourth Amendment for both false arrest and false imprisonment); *Manuel v. City of Joliet*, 580 U.S. 357, 364–65 (2017) (same). Accordingly,

Weber's motion for summary judgment should be granted as to Hunter's false arrest and false imprisonment claims.

> 2. Weber's motion for summary judgment on Hunter's excessive force claim should be denied.

Because Hunter was a pretrial detainee at the time of the events at issue, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment.[6] *Weber v. Erie Cnty.*, 2024 WL 1054810, at \*2 (W.D. Pa. Jan. 29, 2024), *report and recommendation adopted*, 2024 WL 749681 (W.D. Pa. Feb. 20, 2024), *reconsideration denied*, 2024 WL 1678140 (W.D. Pa. Apr. 18, 2024). *See also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2014). To prevail on this claim, Hunter "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Determining whether an officer's use of force was objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quotation omitted). The factfinder "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Various factors may bear on whether the use of force was reasonable, including but not limited to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Although Weber's affidavit of

---

[6] Hunter does not identify a particular constitutional basis for his excessive force claim. "The Supreme Court has not yet determined whether pretrial detainees can bring excessive-force claims under the Fourth Amendment." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 n.4 (3d Cir. 2012) (citations omitted). Whether Hunter's excessive force claim is analyzed under the Fourth Amendment or the Fourteenth Amendment is largely academic, however, because "the Fourteenth Amendment standard is now almost identical to the Fourth Amendment standard." *Id.* at 195 n.6. *See also Williams v. Wagner*, 2024 WL 1743755, at \*3 (E.D. Pa. Apr. 23, 2024).

14

probable cause describes Hunter's behavior and his response, including his use of force to restrain and subdue Hunter, the affidavit and other evidence is not so clear that the Court can say as a matter of law that Weber's use of force was reasonable. And because the use of force incident occurred outside of the visual range of the dashcam, the video evidence does not address any of the factors relevant to determining the reasonableness of Weber's use of force. Because genuine issues of material fact remain for trial regarding the reasonableness of Weber's use of force, his motion for summary judgment should be denied as to this claim.

       3.   Hunter's cross-motion for summary judgment (ECF No. 88) should be denied.

Having already recommended that Weber's motion for summary judgment be granted as to Hunter's false arrest and false imprisonment claims, it necessarily follows that the undersigned recommends that Hunter's cross-motion for summary judgment be denied as to these claims. But the undersigned's recommended denial of Weber's motion for summary judgment as to Hunter's excessive force claim requires that Hunter's cross-motion be addressed as to this claim. Because Hunter has failed to make a threshold showing that no genuine issue of material fact remains for trial or an entitlement to judgment as a matter of law on his excessive force claim, his cross-motion for summary judgment regarding this claim also should be denied.

Under Federal Rule of Civil Procedure 56(a), a party moving for summary judgment must show two things to be entitled to such relief: (1) that "no genuine dispute as to any material fact" remains for trial, and (2) "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). How the movant makes this showing "depends upon which party will bear the burden of persuasion on the challenged claim at trial." *Celotex Corp.*, 477 U.S. at 331. Where the movant bears the burden of persuasion, "that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* If the

movant makes this "affirmative showing," the "burden of production" then "shifts ... to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial or to submit an affidavit requesting additional time for discovery." *Id.* (citing Fed. R. Civ. P. 56(e), (f)). "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied ...". *Id.* at 332.

In this case, Hunter, as the plaintiff, would have the burden of persuasion at trial as to each element of his claims against Weber. *See Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003) (at trial, "the plaintiff has both the burden of production and the burden of persuasion for each element of the prima facie case"). Therefore, it is Hunter's burden to support his motion for summary judgment with credible evidence showing that no genuine issue of material fact exists as to each element of his claims and that, based on that evidence, he is entitled to judgment as a matter of law. His pro se status does not relieve him of this threshold burden. *See Watson v. Phila. Rous. Auth.*, 629 F.Supp.2d 481, 485 (E.D. Pa. 2009). Hunter's motion and supporting submissions fail to satisfy either prong of his threshold burden.

Hunter's cross-motion for summary judgment simply states, "I am requesting a summary judgment. Thanks for your time." *See* ECF No. 88, p. 1. He then includes a "statement" which sets forth "the facts in my statement as the truth." *Id.*, p. 2. This document is unsworn and unsupported by record evidence. It therefore fails to carry any weight on summary judgment. And even if considered as evidence, it does not support the absence of genuine issues of material fact as to Hunter's excessive force claim because Weber has adduced evidence upon which a jury could reasonably find that his use of force was reasonable, further negating Hunter's entitlement to judgment as a matter of law.

E.  Conclusion

It is respectfully recommended that

1.  Weber's motion for summary judgment on Hunter's false arrest and false

imprisonment claims should be GRANTED.

2.  Weber's motion for summary judgment on Hunter's excessive force claim should

be DENIED.

3.  Hunter's motion for summary judgment should be DENIED in its entirety.

III.  Notice Regarding Objections

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), Fed. R. Civ. P.

72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in

accordance with the schedule established in the docket entry reflecting the filing of this Report

and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell

v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their

response to the objections within fourteen (14) days thereafter in accordance with Local Civil

Rule 72(D)(2).

DATED this 14th day of August, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE